IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TOWN SPORTS INTERNATIONAL, *et al.*, | ) ) ) ) ) ) | Chapter 11 <br><br> Bankruptcy Case No. 20-12168 (CTG) |
| Debtors. | ) ) ) | |
| RAMON MORENO-CUEVAS, | ) ) ) | |
| Appellant, | ) ) ) | |
| v. | ) ) ) | C.A. No. 23-472 (MN) |
| TOWN SPORTS INTERNATIONAL, LLC, | ) ) ) | |
| Appellee. | ) | |

# **MEMORANDUM**

Ramon Moreno-Cuevas, Hartford, CT – *Pro se* appellant.

Robert S. Brady, Sean T. Greecher, Allison S. Mielke, Timothy R. Powell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – Counsel to appellee Town Sports International, LLC.

December 21, 2023
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

*Pro se* appellant Ramon Moreno-Cuevas ("Appellant") has appealed the Bankruptcy Court's April 24, 2023 Order (B.D.I. 1423)[1] ("the April Order"), which denied Appellant's Motion to Lift the Automatic Stay Under § 362(a) (B.D.I. 1405) ("the Fourth Motion") for the reasons stated on the record at the April 24, 2023 hearing (*see* B.D.I. 1432 ("the April Transcript") at 10-15 ("the Bench Ruling")). The Fourth Motion sought leave from the automatic stay under § 362 of the Bankruptcy Code in order to proceed with an action against debtor Town Sports International, LLC ("Town Sports") pending in the U.S. District Court for the District of Connecticut. For the reasons set forth herein, the Court will affirm the April Order.

**I.      BACKGROUND**

      **A.      The Parties**

Town Sports and its debtor affiliates (collectively, "the Debtors") operated 186 fitness clubs in the United States. (*See* A459–A478 ("First Day Decl.") at A464). The COVID-19 pandemic forced the Debtors to close their clubs and halt operations for months in compliance with local and national health mandates. (*See id.* at A461–A463, A468). The Debtors' prepetition efforts to address liquidity concerns—including negotiating concessions with landlords and reducing operating costs to conserve cash—ultimately proved unsuccessful. (A468–A472). On September 14, 2020 ("the Petition Date"), Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. (*See id.*)[2]

---

[1]      The docket of the chapter 11 cases, captioned *In re Town Sports International, LLC*, No. 20-12168 (CTG) (Bankr. D. Del.), is cited herein as "B.D.I. __." The Appendix (D.I. 16-18) filed in support of the Appellee's answering brief is cited herein as "A__."

[2]      On September 14, 2020, 162 of the Debtors filed petitions for relief in the Bankruptcy Court. (A439). On October 21, 2020, 42 additional Debtors also commenced voluntary cases under the Bankruptcy Code.

Prior to the chapter 11 filing, on November 14, 2019, Appellant filed a lawsuit against Town Sports and certain related non-debtor parties (A1–A337), which is currently pending in the U.S. District Court for the District of Connecticut. *See Moreno-Cuevas v. Town Sports Int'l (TSI)*, Case No. 3:19-cv-01803-KAD (D. Conn. Nov. 14, 2019) ("the Connecticut Action"). The dispute arises out of a purported sublease agreement between Town Sports d/b/a New York Sports Club ("NYSC") and Appellant for office space at a NYSC facility in West Hartford, Connecticut. (*See* A339). Appellant's 183-page, fifteen count complaint, which includes 153-pages of exhibits, generally contends that Town Sports/NYSC rescinded the sublease agreement without cause after Appellant had already moved equipment into the office space, and that Town Sports/NYSC improperly locked him out of the office space and would not return items necessary for his business, including "computers," "other teaching tools, . . . " and "computerized data developed in three years of hard work, needed to teach a class with a website where the students could do their homework." (D.I. 12 at 3). The complaint additionally disputes certain charges to Appellant's credit card associated with his gym membership that he contends were not refunded. (*See* A339).

Prior to the Petition Date, Town Sports and other defendants to the Connecticut Action filed a motion to dismiss ("the Connecticut MTD"), asserting, among other things, that Appellant's claims were barred by collateral estoppel and res judicata and under the *Rooker-Feldman* doctrine because judgment had already been entered for the Debtors in a prior action Appellant had brought in state court. *See Moreno-Cuevas v. Town Sports Int'l (TSI)*, Case No. 3:19-cv-01803-KAD (D. Conn. Apr. 30, 2020), ECF No. 39; A338. The Connecticut MTD was still pending when the Debtors' chapter 11 filing stayed the Connecticut Action. The other defendants filed a motion to

stay all proceedings in the Connecticut Action, given that Town Sports had been defending on behalf of all defendants, and that motion was granted on March 8, 2021. (*See* A426).

### B. Chapter 11 Cases

On October 20, 2020, the Debtors filed a motion (A669) ("the Bar Date Motion") seeking to establish bar dates by which claimants must file proofs of claim in the chapter 11 cases. On October 29, 2020, the Bankruptcy Court entered an order (A690) ("the Bar Date Order") approving the Bar Date Motion and establishing, among other things, 11:59 p.m. on December 1, 2020 as the deadline ("the General Bar Date") by which all claimants whose claims are listed as contingent, unliquidated, and disputed on the Schedules (as defined below) must file proofs of claim in the chapter 11 cases. On October 30, 2020, the Debtors filed the *Notice of Deadlines for the Filing of Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* (A904) ("the Bar Date Notice") in the chapter 11 cases.

On October 29, 2020, Town Sports filed its Schedules of Assets and Liabilities and Statements of Financial Affairs (together, "the Schedules"). (A748). Town Sports listed Appellant on the Schedules as holding a contingent, unliquidated, and disputed claim relating to the Connecticut Action. On November 5, 2020, the Debtors' claims and noticing agent served Appellant with the Bar Date Notice, a personalized proof of claim form, related instructions, and a postage pre-paid envelope. (*See* A1022). Additionally, on the same day, the Debtors published the Bar Date Notice in *The New York Times*. (*See* A1019). Appellant never filed a proof of claim in the chapter 11 cases. According to Appellant, his failure to file a proof of claim in the chapter 11 cases was purposeful as filing a proof of claim otherwise would have resulted in losing his right to a jury trial. (*See* D.I. 12 at 9-10).

During the chapter 11 cases, the Debtors engaged in a court-approved process for the sale of substantially all of the Debtors' assets. (A479, A625, A913& A1026). On December 18, 2020,

3

the Debtors filed their second amended joint chapter 11 plan (A1026) ("the Plan"). The Plan designated a Plan Administrator to wind down the Debtors' affairs and established a trust ("the Non-Released Claims Trust") to oversee the administration of general unsecured claims, such as those related to Appellant's prepetition litigation. (*See* Plan at A1051–A1052, A1062 & A1066 (Arts. IV.D, IV.E, VII.B & VIII.C.2.)).

On December 18, 2020, after hearing testimony and upon review of the pleadings and the record of the chapter 11 cases, the Bankruptcy Court entered an order (A1082) ("the Confirmation Order") confirming the Plan. Appellant did not object to the Plan or entry of the Confirmation Order. The effective date of the Plan occurred on December 22, 2020 ("the Effective Date"). (*See* A1201). Following the Effective Date, the automatic stay imposed by § 362 of the Bankruptcy Code ("the Automatic Stay") was replaced with the Plan's injunction (A1071, Article IX.F) ("Plan Injunction"). The Plan Administrator and the Non-Released Claims Trustee, as applicable, proceeded to reconcile the claims filed in the chapter 11 cases, including general unsecured claims, and made distributions to creditors entitled to receive such distributions. As of July 2023, the Plan Administrator was winding down the Debtors' affairs.

    **C.**    <u>**Appellant's Requests for Relief from the Automatic Stay**</u>

Appellant filed four motions for relief from the automatic stay, seeking to proceed with the Connecticut Action, all of which were denied by the Bankruptcy Court. On November 19, 2021 and December 13, 2021, Appellant filed his first motion for relief from stay and subsequent amendment thereto (A1204 & A1211) (together, "the First Motion") to which the Debtors objected (A1232) ("the First Objection"). On January 11, 2022, the Bankruptcy Court held a hearing ("the January Hearing") to consider the First Motion, at which Appellant failed to appear. (*See* A1294-A1304 ("the January Transcript")). On January 12, 2022, the Bankruptcy Court entered an order (A1305) ("the January Order") denying the First Motion on the merits.

4

On January 14, 2022 and January 24, 2022, Appellant filed a motion for reconsideration of the January Order and subsequent amendment thereto (A1307 & A1315) (together, "the Second Motion"), to which the Debtors objected (A1334) ("the Second Objection"). On February 15, 2022, the Bankruptcy Court held a hearing ("the February Hearing") to consider the Second Motion, at which Appellant again failed to appear. (*See* A1351–A1355 Tr. ("the February Transcript")). Ruling from the bench, the Bankruptcy Court upheld the January Order and denied, with prejudice, the Second Motion (A1354) ("the February Ruling").

On February 22, 2022 and February 28, 2022, Appellant filed a motion for rehearing and subsequent amendment thereto (A1356 & A1367) (together, "the Third Motion"). On March 1, 2022, the Bankruptcy Court entered an order (A1389) ("the March Order") summarily denying the Third Motion.

On March 28, 2023, Appellant filed a fourth motion for stay relief (A1390) ("the Fourth Motion"), to which the Debtors objected (A1397) ("the Third Objection"). On April 24, 2023, the Bankruptcy Court held a hearing ("the April Hearing") to consider the Fourth Motion and issued a Bench Ruling denying the Fourth Motion. (*See* April Transcript at 10:4-15:10). As a technical matter, the Bankruptcy Court noted, the automatic stay terminated when the Plan was confirmed. (*Id*. at 13:5-10). Because the automatic stay and Plan Injunction operate in a very similar fashion, the Bankruptcy Court treated Appellant's motion for relief from the stay as a motion for relief from the Plan Injunction. (*See id*.) Because Appellant failed to file a proof of claim, and because such a filing was the "exclusive mechanism" for recovering on account of Appellant's prepetition claims and causes of action, the Bankruptcy Court found no cause to grant Appellant relief from the Plan Injunction to proceed with the Connecticut Action. (*See id.* at 13). The Bankruptcy Court overruled Appellant's additional arguments on the basis that he failed to raise them prior to Plan

5

confirmation. (*See id*. at 13:20-14:25). On April 24, 2023, the Bankruptcy Court entered the April Order (A1525) memorializing its Bench Ruling and denying the Fourth Motion. Thereafter, Appellant filed his appeal of the April Order. (D.I. 1). The appeal is fully briefed. (D.I. 12, 15, 20). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from all "final judgments, orders, and decrees" of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Court reviews the Bankruptcy Court's legal determinations de novo and its factual determinations for clear error. *In re Wettach*, 811 F.3d 99, 104 (3d Cir. 2016) (citation omitted). The Bankruptcy Court's "decision to grant or deny relief from the automatic stay or, by analogy, the [p]lan [i]njunction, is reviewed for abuse of discretion." *In re In re WorldCom, Inc.*, 2006 WL 2255071, *2 (*citing In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990)). "An abuse of discretion exists whenever a judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used." *In re Kaiser Aluminum Corp.*, 303 B.R. 299, 303 (D. Del. 2003) (internal quotations and citation omitted). Finally, Appellant "proceeds *pro se*, and accordingly, we construe his pleadings liberally." *See Laughlin v. Peck,* 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).

## III.   ANALYSIS

The sole issue on appeal is whether the Bankruptcy Court abused its discretion in denying the Fourth Motion, based on its determinations that, because Appellant failed to file a proof of claim in the chapter 11 cases, and because Appellant is not entitled to a distribution from Town Sports' estate regardless of any litigation outcome, granting Appellant relief from the Plan

6

Injunction to proceed with the Connecticut Action was a futile exercise, and thus Appellant had failed to demonstrate cause warranting such relief.

### A. The Fourth Motion is a Core Proceeding

Appellant argues that the Bankruptcy Court erred in failing to determine whether the motion for relief from the Automatic Stay (or Plan Injunction) was a "core" proceeding, and because it did not make that determination, "the Bankruptcy Court did not have constitutional authority to issue a final Order." (D.I. 12 at 20-21). Under § 157 of title 28 of the United States Code, bankruptcy judges may "hear and determine" core proceedings arising under title 11 of the United States Code. 28 U.S.C. § 157(b). In other words, bankruptcy judges may hear, decide, and enter final judgments and orders in cases involving core proceedings. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). Courts will determine whether a proceeding is "core" by, first, consulting the non-exclusive list of core proceedings identified in section 157(b) . . .". *In re Radnor Holdings Corp.*, 564 B.R. 467, 485-86 (D. Del. 2017), *aff'd*, 706 F. App'x 94 (3d Cir. 2017). Under § 157(b)(2), core proceedings include "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G).

As the Fourth Stay Motion is identified as a "core" proceeding under the express terms of § 157(b)(2), the Bankruptcy Court had the authority to hear, decide, and enter final judgments and orders related to the Fourth Motion. To the extent Appellant argues that the Bankruptcy Court was required make an express determination at the April Hearing or in the April Order, such determination was made previously in the January Order and the March Order. (*See* January Order at A1305 ("and having determined that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)"); March Order at A1389 ("this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)")).

B.   **The Bankruptcy Court Did Not Abuse its Discretion in Denying the Fourth Motion**

As the Bankruptcy Court explained in its thorough Bench Ruling, Appellant failed to establish "cause" to modify the Automatic Stay to allow Appellant to proceed in the Connecticut Action. (B.D.I. 1432 at 10-15). Appellant's arguments to the contrary are unavailing.

As an initial matter, the Bankruptcy Court construed the Fourth Motion as a motion for relief from the Plan Injunction, as the Automatic Stay had terminated. (*See* April Transcript at 13). Such an approach is in line with similar cases. *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *1 (Bankr. S.D.N.Y. Sept. 11, 2017) (treating a request for relief from the automatic stay as a request for relief from a plan injunction); *In re WorldCom, Inc.*, 2006 WL 2255071, at *7 (S.D.N.Y. Aug. 4, 2006) (treating movant's "request to lift the automatic stay as a request to lift the Plan Injunction, as it had become effective after [movant's] motion was filed."). Section 362(d) of the Bankruptcy Code permits the Bankruptcy Court to lift or modify the Automatic Stay for "cause." 11 U.S.C. § 362(d). Because the term "cause" is not defined in § 362(d) of the Bankruptcy Code, courts "conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015).

Courts in the Third Circuit consider three factors when balancing competing interests of debtors and movants: "(1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (citation omitted). "To establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips

8

significantly in [its] favor." *Atl. Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.*), 298 B.R. 222, 225 (D. Del. 2003) (internal quotations and citation omitted).

### 1. Prejudice to the Bankruptcy Estate and Reorganized Debtor

The first and most important factor considered by courts is prejudice to the bankruptcy estate. *See W.R. Grace*, 2007 WL 1129170, at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit") (citation omitted). As a result, cause exists only if harm to Appellant by maintenance of the Plan Injunction "considerably outweighs" the harm to the Debtors from the lifting of the Plan Injunction. *See, e.g., In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009). Appellant cannot satisfy this heavy burden.

Had the Bankruptcy Court granted Appellant relief from the Plan Injunction to allow the continuation of the Connecticut Action, such a ruling would have imposed substantial prejudice upon the Debtors and would have impeded the administration of the Debtors' estates. Appellant is not entitled to any distribution from the Debtors' estates because he did not file a proof of claim in the chapter 11 cases. (*See* April Transcript at 13 ("[T]he exclusive mechanism for recovering as a result of whatever happened to you before the bankruptcy would have been through the filing of a proof of claim and the resolution of that claim in the bankruptcy process and the receipt of an appropriate distribution on account of that claim. But the time for doing that has long passed and as a result, there isn't cause to grant relief from the automatic stay.")). Given that Appellant is not entitled to any distribution under the Plan, relief from the Plan Injunction would have served limited purpose—affording Appellant only the ability to pursue and liquidate claims, but not the right to recover from Town Sports' estate—while imposing on Town Sports, on the other hand, significant harm in the way of considerable expense, burden, and delay in the administration of the chapter 11 cases. (*See* January Transcript at A1301–A1302 ("[O]n notice and an opportunity

9

to be heard, [Appellant] did not file a proof of claim prior to the bar date. [Appellant] has no claim that can be allowed in the case and any victory that may or may not occur . . . were the matter to go forward, would be hollow, because there would be no redress or ability to gain any recovery from the debtor.")).

Given the cost to Debtors' estates, granting Appellant relief from the Plan Injunction would only serve to deplete the Debtors' limited resources and diminish recoveries to creditors entitled to receive distributions. (*See id.* at A1301–A1302 ("So, it's really a futile exercise that would severely hamper the [Debtors]. It costs a lot of money. It costs a lot of time. It would delay the closing of the case for zero reason, since [Appellant] has no claim."))*; see also Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . ."); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (same). The Bankruptcy Court correctly determined that this factor weighed in favor of Town Sports.

### 2. Hardship to Appellant

With respect to the second factor—hardship to Appellant—as noted above, Appellant did not file a claim in the chapter 11 cases and is therefore not entitled to a distribution from the Debtors' estates under the Plan, which is the exclusive source of any recovery for Appellant's prepetition claims and causes of action against the Debtors. Relief from the Plan Injunction would not have benefitted Appellant because regardless of whether the request for relief from the Plan Injunction was granted or denied, Appellant would be left with no source of recovery. The Bankruptcy Court correctly determined Appellant was not prejudiced by the continued imposition of the Plan Injunction

### 3. Probability of Appellant Prevailing on the Merits

With respect to the third factor, Appellant's briefs fall short of demonstrating a likelihood of success on the merits of the Connecticut Action. (*See* D.I. 12, 20). Debtors have already obtained a favorable judgment in a separate state court action, which involves the same subject matter as the Connecticut Action, that Appellant brought prior to the Connecticut Action. *See Moreno-Cuevas v. Town Sports Int'l (TSI)*, Case No. 3:19-cv-01803-KAD (D. Conn. Apr. 30, 2020), ECF No. 39 at 7. (A357). Appellant's brief identifies no basis to find an abuse of discretion in regard to this factor.

In considering Appellant's request for relief, the Bankruptcy Court applied the correct standard, weighing the prejudice to the estate against the harm to the Appellant. It is undisputed that Appellant chose not to file a proof of claim. And although Appellant disagrees that filing a proof of claim against the estate should be his exclusive means for recovery on his contingent, disputed, unliquidated prepetition litigation claim, that is a matter of well-settled law. Under these circumstances, the Bankruptcy Court's determination to deny relief from the Plan Injunction was not "arbitrary, fanciful, or unreasonable." *In re Kaiser Aluminum*, 303 B.R. at 303. To the contrary, granting Appellant relief from the Plan Injunction to proceed with the Connecticut Action would burden the estate with costly litigation while providing Appellant no avenue to recovery. As Appellant failed to demonstrate cause for such relief, his motion was properly denied.

### C. Appellant's Additional Arguments Are Unavailing

#### 1. The Bankruptcy Court's Disregard of Appellant's Dischargeability Arguments Was Not an Abuse of Discretion

Although not entirely clear from the briefing, Appellant appears to argue that his claim against the estate is a "debt for fraud," that claims based on fraud are non-dischargeable, and therefore he was not required to file a proof of claim to preserve his claim. Appellant argues that

his "claim cannot be discharged pursuant to 11 [U.S.C.] 1141(3)(C)". (Second Motion at A1312; *see also* D.I. 12 at 8-9). To the extent that Appellant means § 1141(d)(3)(C), that section provides that "[t]he confirmation of a plan does not discharge a debtor if—the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title." 11 U.S.C. § 1141(d)(3)(C). Generally speaking, "section 727 provides that the [bankruptcy] court must grant a discharge to chapter 7 debtor unless one or more of the specific grounds for denial of a discharge enumerated in paragraphs (1) through (12) of section 727(a) is proven to exist." 6 COLLIER ON BANKRUPTCY ¶ 727.01 (16th ed.). The specific grounds include a chapter 7 debtor that "knowingly and fraudulently, in or in connection with the [chapter 7] case," commits one of the generally fraudulent acts described in subsection (a)(4), including, "mak[ing] a false oath or account," "present[ing] or us[ing] a false claim," or withholding books and records relating to the debtor's property or financial affairs. *See* 11 U.S.C. § 727(a)(4). According to Appellant, if Town Sports' case were a case under chapter 7, Town Sports would have been denied a discharge because Debtors "made a false oath" and "presented a false claim" in the Connecticut Action, and the Connecticut Action is "related to" their chapter 11 cases. (*See* Fourth Motion at 6-7). Appellant goes so far as to assert that "the Bankruptcy Court admitted that the debt with [Appellant] is nondischargeable" (D.I. 12 at 5) and further reasons that "[t]here is no statute or precedent that says that filing a claim is necessary not to discharge a nondischargeable debt." (*Id*. at 9).

There are several problems with the arguments above, and the Court addresses only a few below. First, the Bankruptcy Court in no way concluded, as Appellant asserts, that Appellant's claims and causes of action are nondischargeable, only that such an argument was precluded by the confirmed Plan. Indeed, the Bankruptcy Court specifically noted in its Bench Ruling that it had formed no view as to Appellant's argument. (*See id.* at 14:7-16 ("I'm not forming any view

12

about whether the argument would or wouldn't have prevailed had you made it at that time . . .)). Second, Appellant did not object to confirmation of the Plan, and the Bankruptcy Court properly held that Appellant had therefore forfeited his right to argue about the Debtors' entitlement to a discharge.  (*See* April Transcript at 13–14 ("I have no ability to consider that argument on the merits; it's simply forfeited by virtue of the fact that the [P]lan was entered and the [Plan I]njunction is in effect.")).  Third, as the Plan confirmed in the chapter 11 cases provides for the liquidation of the Debtors, the Plan and Confirmation Order did not grant any discharge to the Debtors, and the Debtors do not rely on such a discharge.  Rather, they rely on the Plan Injunction to which Appellant did not object.

Appellant's arguments regarding the dischargeability of his claims and causes of action are not issues that can be considered by the Court, and the Bankruptcy Court properly determined not to consider the Fourth Motion on the grounds of dischargeability.

### 2. Appellant's Asserted Right to Jury Trial Did Not Obviate the Requirement to File a Proof of Claim

The Bar Date Notice clearly set forth which entities holding claims against the Debtors that arose before the Petition Date were required to file a proof of claim by the General Bar Date. (*See* B.D.I. 540 at 4 ("any entity whose claim . . . is listed as contingent, unliquidated, or disputed if such entity desires to participate in any of these chapter 11 cases or share in any distribution in any of these chapter 11 cases")).  The Bar Date Notice also set forth the consequences for failing to file a proof of claim, including losing the right to share in any distribution in the chapter 11 cases on account of the claim.  (*See id*. at 7).  Despite these clear instructions, Appellant asserts that his failure to file a proof of claim in the chapter 11 cases was a purposeful omission to avoid losing his right to a jury trial.  (*See* D.I. 12 at 9-10 ("a creditor loses the right to a jury trial by filing a claim"); *id*. at 14 ("absent the filing of the proof of claim, a creditor is entitled to a jury trial on

13

such a claim") (citations omitted)). Appellant asserts that he was not required to file proof of claim because he "never had the intention to participate in the distribution of the Debtors' assets." (*See* D.I. 12 at 14). Appellant further asserts that, despite failing to file a proof of claim on account of his prepetition claims and causes of action, he nevertheless retained the right to proceed with the Connecticut Action, and to seek any recovery on his prepetition claims against the Debtor, following the reorganization. (*See* D.I. 12 at 14). Appellant's reasoning is flawed.

The Supreme Court has held that when a creditor files a claim against a bankruptcy estate, the filing triggers a process of allowance and disallowance of claims, thereby subjecting the creditor to the equity power of the bankruptcy court. *See Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 58 (1989) (explaining that the filing of a proof of claim subjects the claimant to the equitable jurisdiction of the bankruptcy court); *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (same); *see also Travellers Int'l AG v. Robinson*, 982 F.2d 96, 99-100 (3d Cir. 1992) (same). Thus, claimants face a choice when determining whether to file a proof of claim in a bankruptcy case: assert a proof of claim, and submit to the jurisdiction of the bankruptcy court (thereby potentially relinquishing any rights to a jury trial), or do not submit a proof of claim, and be barred from collecting on a debt and sharing in a pro rata share of a bankruptcy estate. Appellant chose not to file a proof of claim in the chapter 11 cases, thereby relinquishing any rights to receive a distribution from the Debtors' estates on account of his contingent, unliquidated, and disputed prepetition claim. Regardless of any rights Appellant may have to a jury trial in the Connecticut Action, Appellant was required to file a proof of claim in order to share in any distribution on account of his claims and causes of action against the Debtors.

Appellant repeatedly cites *Langenkamp* for its language that "absent the filing of the proof of claim, a creditor is entitled to a jury trial on such a claim." (*See* D.I. 12 at 10-12). But this

14

quote is taken out of the larger context of the Supreme Court's discussion of a more complex issue,[3] and *Langenkamp* does not support Appellant's theory that, by not filing a proof of claim, he retained both his right to a jury trial in the Connecticut Action and his right to recover from the Debtors on account of his prepetition claims and causes of action once liquidated.

Finally, Appellant's choice not to file a proof of claim, and to relinquish his right to any potential distribution, does not obviate the requirement of a litigant to meet the standards for obtaining relief from an Automatic Stay or Plan Injunction. As discussed above, given the circumstances, relief from the Plan Injunction would prove to be a futile exercise, as any relief afforded to Appellant in the Connecticut Action would result in no recovery. Accordingly, Appellant failed to establish that cause exists to modify the Plan Injunction, and the Bankruptcy Court's decision must be affirmed.

---

[3] In *Langenkamp,* the Supreme Court noted its previous holding that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp*, 498 U.S. at 44 (quoting *Granfinanciera*, 492 U.S. at 58-59 & n.14). "If the creditor is me, in turn, with a preference action from the trustee, that action will become part of the claims-allowance process which is triable only in equity." *Id.* It reasoned that "the creditor's proof of claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship under the bankruptcy court's *equity jurisdiction*." *Id.* "As such, there is no Seventh Amendment right to a jury trial" on the issue of the alleged preferential transfer, even though such a suit "amounts to a legal action to recover a monetary transfer." *Id.* at 44-45. "If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial." *Id*. at 45 (citations omitted). Thus, the Supreme Court's statement that "absent the filing of the proof of claim, a creditor is entitled to a jury trial on such a claim" referenced the right that the creditor in that case would otherwise have had to a jury trial on the alleged preferential transfer action had it not filed a proof of claim against the bankruptcy estate. The decision in no way supports Appellant's theories or provides cause to modify the Plan Injunction.

## IV. CONCLUSION

The Court echoes the observations made by the Honorable Craig T. Goldblatt in his careful Bench Ruling, including that "bankruptcy law is quite complicated and in many ways, counterintuitive, and that even licensed attorneys who aren't trained in bankruptcy, often have difficulty appreciating some of the concepts and navigating the process," and that although Appellant was entitled to appear *pro se*, proceeding without a lawyer in complex chapter 11 proceedings is a "complicated" and "challenging thing to do." (*See* April Transcript at 10:4-12). For the reasons explained above, the Court will affirm the April Order. An appropriate order follows.